UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cr-103-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| OSCAR BELLO-LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motions for Compassionate Release/Reduction of Sentence. (Doc. Nos. 39, 41). The Government has responded in opposition to the motions. (Doc. No. 42). For the following reasons, Defendant's motions will be **DENIED**.

## I.     BACKGROUND

Between 2017 and 2018, Defendant was the leader of a drug-trafficking organization that operated in Charlotte, North Carolina. (Doc. No. 21 ¶ 6). Defendant coordinated the distribution of both crystal methamphetamine and heroin, employing multiple drug runners and distributing narcotics out of multiple stash houses in the process. (Id. at ¶¶ 6–7). Defendant also concealed drug proceeds in furtherance of the organization's money-laundering conspiracy. (Id.). Defendant committed these crimes while unlawfully in the United States. (Id.). At the time he committed these offenses, Defendant was 31 years old and had previously been convicted of one drug offense. (Id. at ¶ 50).

When the police arrested Defendant, the police seized a large quantity of heroin and a stolen firearm. (Id. at ¶ 7). After his arrest, Defendant admitted to distributing heroin and laundering money. (Id.)

1

The United States charged Defendant with conspiracy to possess with intent to distribute methamphetamine and more than 1,000 grams of heroin, 21 U.S.C. § 846; possessing with intent to distribute heroin, 21 U.S.C. § 841; money laundering conspiracy, 18 U.S.C. § 1956(h); possessing a firearm as an illegal alien, 18 U.S.C. § 922(g)(5); and illegally reentering the United States after a prior removal, 18 U.S.C. § 1326(b). (Doc. No. 1).

Defendant entered into a plea agreement with the United States and agreed to plead guilty to all five offenses. (Doc. No. 6 ¶ 1). In the plea agreement, Defendant admitted that, including offense-level increases, his adjusted offense level under the Sentencing Guidelines should be 37. (Id. at ¶ 8(f)).

This Court's probation office submitted a presentence report and found that the Sentencing Guidelines advised a sentence of between 210 and 262 months in prison, based on a total offense level of 37 and a criminal history category of I. (Doc. No. 21 at ¶ 75). This Court varied below the guidelines range and sentenced Defendant to 188 months in prison. (Doc. No. 34 at 2; Doc. No. 35 at 3). In November of 2020, in response to a motion by the United States under Federal Rule of Criminal Procedure 35, this Court reduced Defendant's sentence to 135 months in prison. (Doc. No. 38).

While in the Bureau of Prisons, Defendant has completed six educational courses or work assignments. Defendant has not received any disciplinary citations. In April of 2023, Defendant submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

## II. DISCUSSION

Once a defendant properly exhausts his administrative remedies, 18 U.S.C. § 3582(c)(1)(A) permits this Court to reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that
2

(i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13.

That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals held that Section 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A).").

Therefore, this Court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release and the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may continue to consider the § 1B1.13 factors, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Defendant has not established an extraordinary and compelling reason for compassionate release. Defendant argues that he is entitled to compassionate release because, as an illegal alien, he cannot receive the same good-time credits received by inmates who are United States citizens, he cannot be considered for release to home confinement, and he cannot take advantage of the Bureau of Prisons' Residential Drug Abuse programs. (Doc. No. 41 at 4–8).

It is true that Defendant, because he is deportable, cannot receive good-time credits accessible to inmates who are not deportable. 18 U.S.C. § 3632(d)(4)(E)(i). Additionally, Defendant cannot be considered for release to home confinement due to his deportable status and cannot take advantage of certain Bureau of Prisons programs.

However, these conditions do not amount to an extraordinary and compelling circumstance. The inability to receive good-time credits "is a generalized complaint applicable to presumably a great many inmates and is not 'extraordinary.'" United States v. Santillan, No. 518CR48KDBDSC14, 2023 WL 4002526, at *2 (W.D.N.C. June 14, 2023). The circumstance is not compelling either. At the time of sentencing, the Court was aware of the restrictions that would apply to Defendant, and sentenced Defendant accordingly.

Lastly, a claim for compassionate release is not the appropriate vehicle for Defendant to raise concerns about the execution of his sentence–whether those concerns pertain to good-time credits, release to home confinement, or access to Bureau of Prisons programs. United States v. Espinal, No. 19CR00622 (DLC), 2022 WL 17736632, at *2 (S.D.N.Y. Dec. 16, 2022) ("The Bureau of Prisons is responsible for calculating his good time credits and determining his projected release date. A motion for compassionate release is not the correct vehicle in which to challenge that determination."); See also United States v. Enciso, No. 8:14-CR-379-CEH-TGW, 2023 WL 3569276, at *3 (M.D. Fla. May 19, 2023) ("The provision of earned time credits is

4

within the purview of the Bureau of Prisons, not this Court."). A challenge to the execution of a sentence is properly asserted under 28 U.S.C. § 2241. Fontanez v. O'Brien, 807 F.3d 84, 86 (4th Cir. 2015) ("As a general matter, a federal prisoner must challenge the execution of a sentence under 28 U.S.C. § 2241….").

The Court further finds that even if Defendant had shown extraordinary and compelling reasons for compassionate release, consideration of the Section 3553(a) factors counsel against relief. This Court must consider the applicable sentencing factors in 18 U.S.C. § 3553(a) as part of its compassionate release analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13CR133, 2021 WL 54364, at *4 (E.D. Va. Jan. 6, 2021) (citing 18 U.S.C. § 3553(a)(1)–(2)). Section 3553(a) also instructs courts to consider the sentencing range established for the offense, as well as "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(4), (6).

Here, Defendant's offense conduct was serious. He led an extensive drug-trafficking network that distributed large quantities of heroin and crystal methamphetamine and laundered hundreds of thousands of dollars. While Defendant has admirably served 63 months of his sentence without any disciplinary citations, the nature and circumstances of Defendant's offense, his history and characteristics, and the need for deterrence, for just punishment, and to protect the public all weigh against a sentence reduction.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motions for Compassionate Release/Reduction of Sentence, (Doc. Nos. 39, 41), are **DENIED**.

Signed: August 24, 2023

Max O. Cogburn Jr.
United States District Judge